# EXHIBIT A

| | |
|---|---|
| 1 | KEVIN V. RYAN (CASBN 118321)<br>United States Attorney |
| 2 | |
| 3 | MARK L. KROTOSKI (CASBN 138549)<br>Chief, Criminal Division |
| 4 | GARY G. FRY (CASBN 85582)<br>Assistant United States Attorney |
| 5 | |
| 6 | 150 Almaden Boulevard, Suite 900<br>San Jose, California 95113<br>Telephone: (408) 535-5061<br>Facsimile: (408) 535-5066<br>E-Mail: gary.fry@usdoj.gov |

**FILED**

SEP - 5 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 06-00597 RMW |
| Plaintiff, | ) | |
| v. | ) | **PLEA AGREEMENT** |
| SUPER MICRO COMPUTER, INCORPORATED | ) | Date: Monday September 11, 2006<br>Time: 9:00 a.m.<br>Court: Hon. Ronald M. Whyte |
| Defendant. | ) | |

Super Micro Computer, Inc. (hereafter "the company"), a California corporation appearing through counsel Michael Tubach, Esq. of O'Melveny & Myers LLP, and the United States Attorney's Office for the Northern District of California (hereafter "the government") enter into this written plea agreement (the "Agreement") pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

1. The company agrees to plead guilty to the sole count set forth in an Information filed September 1, 2006. The Information charges the company with the illegal exporting of

PLEA AGREEMENT

items to The Islamic Republic of Iran without a necessary license, in violation of 50 U.S.C. § 1705(b). The company agrees that the elements of the offense are as follows: (1) The company violated a Regulation issued under Chapter 35 of Title 50 of the United States Code; and (2) the company, or an employee or officer acting on its behalf, violated the Regulation willfully. The company agrees that the maximum penalties are as follows:

|   |   |   |
|---|---|---|
| a. | Maximum prison sentence | 0 years |
| b. | Maximum fine | $500,000 |
| c. | Maximum supervised release term | 3 years |
| d. | Mandatory special assessment | $400 |

2. The company agrees that it is guilty of the offense to which it will plead guilty, and it agrees that the following facts are true:

As more specifically set forth below, between approximately December 28, 2001, and January 29, 2002, an employee of Super Micro, whose identity is known to the company and the government, knowingly caused 300 of Super Micro's P4SBA+ Motherboards to be exported to Dubai, United Arab Emirates (UAE), for trans-shipment to Iran.

On or about December 28, 2001, a company named Super Net in Dubai, United Arab Emirates (UAE) ordered 300 motherboards from Super Micro. It requested that the motherboards be shipped to UAE for trans-shipment to Iran. The sales price was $27,600.00.

On December 28, 2001, Super Micro shipped the motherboards via air from the United States to Super Net Computers LLC, in UAE, knowing that the motherboards would be trans-shipped to Iran.

On January 23, 2002, Super Net, via a wire transfer, deposited $50,000.00 into Super Micro's bank account at Bank of America in San Jose, California.

The company agrees that at the time that the P4SBA+ motherboards were shipped, they were controlled for export purposes under export commodity control number (ECCN) 4A003.b. The company agrees that under ECCN 4A003.b, a license was required to export the motherboards to Iran. The company agrees that it did not seek, and had not obtained, such a license prior to exporting the motherboards.

The company agrees that the government has evidence which could convince a trier of fact that at the time of the export, the company knew that it was illegal to export its motherboards without a license. The company also agrees that at the time of the export it knew that the United States had imposed an embargo against the Islamic Republic of Iran.

The government agrees that once the company had become aware of the investigation in February of 2004, the company caused to be implemented an internal export control program, and hired personnel to execute the program. The government agrees that it has no evidence that violations took place once the program was in place.

3. The company agrees to give up all rights that it would have if it chose to proceed to trial, including the rights to a jury trial with the assistance of an attorney; to confront and cross-examine government witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth Amendment claims; to any further discovery from the government and to pursue any affirmative defenses and present evidence.

4. The company agrees to give up its right to appeal its conviction, the judgment, and orders of the Court so long as the Court sentences the company in accordance with the terms of this plea agreement. It also agrees to waive any right it may have to appeal any aspect of the sentence, including any orders relating to forfeiture and/or restitution, so long as the Court sentences the company in accordance with the terms of this plea agreement.

5. The company agrees not to file any collateral attack on its conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, or motion under 18 U.S.C. § 3582, at any time in the future after it is sentenced so long as the Court sentences the company in accordance with the terms of this plea agreement, except that it reserves its right to claim that its counsel was ineffective in connection with the negotiation of this plea agreement or the entry of its guilty plea.

6. The company agrees not to ask the Court to withdraw its guilty plea at any time after it is entered, unless the Court declines to accept the sentence agreed to by the parties. It agrees that the government may withdraw from this Agreement if the Court does not accept the agreed upon sentence set out below. It agrees that if the Court does not accept the agreed upon sentence set out below, the statute of limitations shall be tolled from the date it signed the plea agreement until the date the Court does not accept the plea agreement.

7. The company agrees that its sentence should be calculated pursuant to the Sentencing Guidelines. It understands that the Court, while not bound to apply the Guidelines,

must consult those Guidelines and take them into account when sentencing, together with the factors set forth in 18 U.S.C. § 3553(a). It also agrees that the Sentencing Guidelines range will be calculated as follows and that it will not ask for any other adjustment to or reduction in the offense level, or for a downward departure from the Guidelines range. Pursuant to U.S.S.G. § 8C2.1, the fine range is to be calculated in accordance with U.S.S.G. § 8C2.10. That section provides that "the court should determine an appropriate fine by applying the provisions of 18 U.S.C. §§ 3553 and 3572." Accordingly, the fine range is from $0 to $500,000.

8. The company agrees that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a), is as follows: a fine of one hundred fifty thousand dollars ($150,000.00) and a $400.00 special assessment. The parties agree that the remedial conduct taken by the company described above makes supervised release or probation unnecessary. The parties agree that there will be no disgorgement, restitution, or forfeiture as part of the sentence. The company agrees that it will pay the fine and special assessment on the date of sentencing. In the event the company fails to pay the fine or special assessment on the date of sentencing, the company will, upon request of the Court, the government, or the U.S. Probation Office, provide accurate and complete financial information, submit sworn statements and give depositions under oath concerning its assets and its ability to pay.

9. The United States and the company jointly submit that this plea agreement, together with the record that will be created by the United States and the company at the plea and sentencing hearing, will provide sufficient information concerning the company, the crime charged in this case, and the company's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and the company agree to request jointly that the Court accept the company's guilty plea and impose sentence immediately after entry of the guilty plea based upon the record provided by the company and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. § 6A1.1, and L.R. 32-1(b) (NDCA 2002). The Court's denial of the request to impose immediate sentence will not void this plea agreement.

10. The company agrees not to commit or attempt to commit any crimes before sentence is imposed. It also agrees not to intentionally provide false information to the Court, the Probation Office, or the government; and not to fail to comply with any of the other promises it has made in this Agreement. The company agrees that, if it fails to comply with any promises it has made in this Agreement, then the government will be released from all of its promises in this Agreement, including those set forth in paragraphs 13 through 15 below, but the company will not be released from its guilty plea.

11. The company agrees that this Agreement contains all of the promises and agreements between the government and itself, and it will not claim otherwise in the future.

12. The company agrees that this Agreement binds the U.S. Attorney's Office for the Northern District of California only, and does not bind any other federal, state, or local agency.

### The Government's Promises

13. The government agrees to move to dismiss any open charges pending against the defendant in the captioned information at the time of sentencing.

14. Upon acceptance of the guilty plea called for by this plea agreement and the imposition of sentence, the United States agrees that it will not bring further criminal charges against the company (or its predecessors, subsidiaries, or affiliates) or current or former directors, officers, or employees for any act or offense committed before the date of this plea agreement relating to violations of the export control or embargo-related laws or that could be filed as a result of the investigation that led to the pending information.

15. The government agrees that the reasonable and appropriate sentence in this case should be as set forth in paragraph 8 above, unless the defendant violates the Agreement as set forth in paragraphs 8 through 9 above or fails to accept responsibility.

### The Defendant's Affirmations

16. The company confirms that it has had adequate time to discuss this case, the evidence, and this Agreement with its attorneys, and that the attorneys have provided the company with all the legal advice that it requested.

17.  The company confirms that while its officers considered signing this Agreement, and at the time they signed it, they were not under the influence of any alcohol, drug, or medicine.

18.  The company confirms that its decision to enter the guilty plea is made knowing the charges that have been brought against it, any possible defenses, and the benefits and possible detriments of proceeding to trial. The company also confirms that its decision to plead guilty is made voluntarily, and no one coerced or threatened it to enter into this Agreement.

Dated: 9/1/06

HOWARD N. HIDESHIMA
Chief Financial Officer
Super Micro Computer, Inc.
Defendant


KEVIN V. RYAN
United States Attorney

Dated: 9-1-06

GARY G. FRY
Assistant United States Attorney

I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights it is giving up by pleading guilty, and, based on the information now known to me, its decision to plead guilty is knowing and voluntary.

Dated: September 1, 2006

MICHAEL F. TUBACH, ESQ.
O'Melveny & Myers LLP
Attorneys for Defendant